UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KUSHAWN S. MILES #237011,

        Plaintiff,

v.

DAVID RINK, et al.,

        Defendants.
_____/

Case No. 2:19-cv-167

Hon. Hala Y. Jarbou
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Kushawn S. Miles pursuant to 42 U.S.C. § 1983. Miles identifies as a Moorish-American Muslim. He says that his sincerely held religious beliefs require him to adhere to Muslim dietary rules. He says that Chippewa Correctional Facility (URF) Chaplain Rink violated his rights under the Free Exercise clause of the First Amendment and the Equal Protection clause of the Fourteenth Amendment by denying him the opportunity to participate in the religious meal program in August and September of 2018.[1] Miles also says that Chaplain Rink retaliated against him for filing a grievance against Rink on the religious meals issue. Miles is currently incarcerated at the Alger Correctional Facility.

---

[1] This Court previously dismissed Miles's claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and all claims against URF Assistant Deputy Warden Corrigan. (ECF Nos. 4, 5.)

Before the Court is Chaplain Rink's motion for summary judgment, which asserts that Miles failed exhaust his administrative remedies. (ECF No. 22.) Rink says that Miles failed to exhaust his claim in grievance **URF-18-09-2504-20E** because Michigan Department of Corrections (MDOC) records show that Miles did not pursue this grievance through Step III. (ECF No. 23, PageID.118.) Rink's motion and supporting memorandum do not address Miles's second relevant grievance – grievance **URF-1902-0509-28A** – which asserts a retaliation claim against Rink.

Miles alleges in his verified complaint that he submitted a Step III grievance in **URF-1809-2504-20E** to his prison counselor to send out of the prison in November 2018, but he never received a response. (ECF No. 1, PageID.5.) Miles asserts that he filed his complaint more than 120 days after he began the grievance process. (*Id.*) Miles also says that he filed the second grievance mentioned above against Defendant Rink for retaliation, but that grievance was rejected as duplicative of **URF-1809-2504-20E**. (*Id.*) Miles also filed a response to Rink's motion for summary judgment. (ECF No. 24.) He essentially argues that he filed a Step III appeal in grievance **URF-1902-0509-28A**, but that the MDOC prevented this appeal from being mailed or filed. Miles attached mailroom receipts that he says showed that he was charged for mail. Miles also notes that the Court may wish to consider and resolve the exhaustion issue in an evidentiary hearing pursuant to *Lee v. Willey*, 789 F.3d 673 (6th Cir. 2015). (ECF No. 24, PageID.266.)

Rink filed a reply. (ECF No. 27.) He says that Miles's arguments are conclusory and that his attachments fail to create a genuine issue of material fact.

Miles then filed an unauthorized sur-reply to Rink's reply.[2] (ECF No. 28.)

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court deny Chaplain Rink's motion because genuine issues of fact exist regarding whether Miles properly exhausted his administrative remedies before he filed his complaint. In addition, the undersigned notes that the exhaustion issue in this case could be addressed in an evidentiary hearing, pursuant to *Lee v. Willey*, as noted by Plaintiff.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

---

[2] "It is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a sur-reply." *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (footnote omitted). The Court may grant leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply. *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010). Miles did not file a motion for leave to file a sur-reply in this case. Accordingly, it is recommended that the Court strike Miles's sur-reply.

[3] Disputed issues of fact regarding exhaustion under the Prison Litigation Reform Act may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter*

4

*v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at

5

737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id*. at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id*. at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id*. at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten

business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal

7

Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant

> defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

**IV. Analysis**

In grievance **URF 1509-2504-20E**, which states incident dates of August 18 and 25, 2018, Miles asserted that he was denied religious meals by Defendant Rink, in violation of his right under RLUIPA, the First Amendment, and the Fourteenth Amendment. A portion of the Step I grievance is shown below.

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

9

> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | KUSHAWN MILES-EL | 237011 | URF-W | H-#246 | 8/18/18, 8/25/18 | 9/2/18 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 8/18/18, 8/25/18
> If none, explain why.
>
> I HAVE SENT SEVERAL KITES TO CHAPLIN RINK AND HE HAS FAILED TO RESPOND OR CALL ME OUT TO RESOLVE THIS ISSUE/MATTER.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. This complaint is being filed against (Chaplin Rink), for "[RELIGIOUS DISCRIMINATION]" and for "[DENYING MY FIRST AMENDMENT RIGHTS TO PRACTICE MY RELIGIOUS BELIEFS]" in VIOLATION OF the [Religious Land Use Institutionalized Persons Act](RLUIPA), 42 U.S.C. §2000 et. seq., the First and Fourteenth Amendments to the US Constitution and Policy Directive, PD 05.03.150, RELIGIOUS BELIEFS AND PRACTICES OF PRISONERS; POLICY STATEMENT: (Prisoners SHALL be allowed to exercise their religious beliefs)
> I have sent Chaplin Rink several kites REQUESTING to be placed on RELIGIOUS MEAL ACCOMMODATIONS (i.e., Halal Diet) and Chaplin Rink has refused to respond to my kites, call me out or allow me to apply for the Religious Halal Diet. This religious discrimination also violates the Equal Protection Clause of the Fourteenth Amendment to the US CONSTITUTION.
>
> The First Amendment and (RLUIPA) PROHIBITS government officials from INTERFERING with "FREE EXERCISE OF RELIGION." The United States Supreme Court has also held that: Jail and Prison Officials MUST give inmates a REASONABLE OPPORTUNITY to exercise their religious beliefs. Cruz v. Beto, 405 U.S. 319, 322 n.2. According to PD 01.04.110, "All department employees MUST familarize themselves with all department rules, policies, procedures and regulations, failure to do so may result in civil and criminal litigation and NOT ENTITLED to be REPRESENTED by the ATTORNEY GENERAL'S OFFICE
> RESOLUTION: Allow me to APPLY for the "HALAL DIET."
>
> Grievant's Signature

(ECF No. 1-1, PageID.15.)

The Step I grievance did not assert a retaliation claim. Miles asserted his retaliation claim in a subsequent grievance – **URF 1902-0509-28A**. A portion of that Step I grievance is attached below:



(ECF No. 1-1, PageID.23.) This grievance does include a reference to a retaliatory act by Defendant Rink.

Rink argues that Miles failed to exhaust his claim in grievance **URF 1902-0509-28A** through Step III. Miles's verified complaint, however, asserts that he properly submitted his Step III appeal in **URF 1902-0509-28A** but never received a response:

11

(ECF No. 1, PageID.5.)

Defendant Rink has ignored Miles's verified complaint and the allegation he had submitted his Step III grievance in accordance with policy. A "verified complaint" – meaning a complaint that includes an attestation that meets the requirements of 28 U.S.C. § 1746 – carries the same weight as would an affidavit for the purposes of summary judgment. *See Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir.1993) (explaining that where a party files a verified complaint, the allegations contained therein "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment") (internal quotation marks omitted).

In addition, Miles's affidavit and response to Defendant's motion assert that prison staff interfered with his Step III appeal. (ECF No. 24, PageID.266.) Rink responds that Miles's conclusory statements do not create a genuine issue of material fact.[5] (ECF No. 27, PageID.309.) Miles has submitted a verified complaint and an affidavit asserting that he did submit a Step III grievance and it was either ignored without response or interfered with by prison staff either intentionally or negligently.

To appeal the response to his Step II response, Miles was required to send his Step III appeal to the Grievance and Appeals Section of the MDOC. Policy Directive 03.02.130 FF and GG states:

---

[5]  Rink argues that Miles has failed to submit into evidence a mailroom receipt showing that Miles mailed his Step III appeal.

> FF. A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response. To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions.
>
> GG. The Grievance and Appeals Section shall be the respondent for Step III grievances on behalf of the Director. Each grievance received at Step III, including those which may be rejected, shall be logged on a computerized grievance tracking system. The tracking system shall include information on the subject matter of each grievance received and, for rejected grievances, the basis for the rejection. The Grievance and Appeals Section shall forward grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). The BHCS Administrator shall ensure the grievance is investigated and a response provided to the Grievance and Appeals Section in a timely manner. The Manager of the Grievance and Appeals Section shall ensure that any additional investigation is completed as necessary for each Step III grievance accepted, including referral to the Internal Affairs Division and, for disability issues, to the Equal Employment Opportunity Office within the Bureau of Human Resources, as appropriate, and that a copy of the Step III response is provided to the grievant.

(ECF No. 2-2, PageID.91.)

When the plaintiff fails to present proper evidence that he exhausted all three steps of his grievance appeals, dismissal for failure to exhaust is justified. *See Davis v. Caruso,* 2008 WL 4561659, at *6–7 (E.D. Mich. Oct.10, 2008), *report adopted in relevant part by* 2009 WL 878193, at *9–10 (Mar. 30, 2009) (finding grievance unexhausted where plaintiff produced completed Step III appeal form but failed to provide evidence showing he sent that form to Lansing or received a response, and defendant showed that the grievance was absent from the Step III tracking database); *Hembree v. Carter,* 2013 WL 3946062, at *4 (E.D. Mich. July 31, 2013) (finding grievance unexhausted despite plaintiff's assertion that he filed a Step III appeal where the grievance was not listed in the Step III grievance report).

However, a question of facts exists regarding whether a plaintiff filed a Step III grievance when he presents evidence that he properly mailed his Step III grievance by attaching a copy of the grievance and an affidavit explaining that he sent the Step III grievance in accordance with policy. *Lowe v. Prison Health Service,*

13

2014 WL 4605285, at *2 (E.D. Mich. Sept. 15, 2014).  In distinguishing the facts from those in *Hembree* the Court explained:

> Plaintiff, on the other hand, alleges that he filed a Step III grievance appeal **to the director's office** on March 9, 2010, but never received a response. Plaintiff attaches . . . a grievance appeal form which he alleges to be the Step III appeal that he mailed on March 9, 2010. The document is dated March 9, 2010, and the reason listed under reason for the step III appeal is "Step II Response unacceptable".  Plaintiff has also filed an affidavit stating that he mailed his Step III grievance on March 9, 2010, "but did not get a response." This evidence creates a genuine issue of material fact as to whether Plaintiff exhausted his administrative remedies, thus precluding summary judgment in Defendants' favor.

*Id.* (emphasis added) (citations omitted).  In *Sims v. Piper*, 2008 WL 3318746 (E.D. Mich. Aug. 8, 2008), the defendant failed to meet his burden of establishing that plaintiff failed to exhaust his administrative remedies where the plaintiff claimed that he sent his Step III grievance appeal and presented an MDOC Disbursement Authorization indicating payment from his prison account for postage to send the mail." *Id.* at *3.

Miles says that he mailed his Step III appeal on November 8, 2018:



(ECF No. 24-1, PageID.268.)

Then, on April 2, 2019, Miles sent a letter addressed to "To Whom It May Concern" explaining that URF staff had sent his Step III grievance to the Attorney General's Office instead of the Director's Office:

14

> RE: STEP 3 - GRIEVANCE
> DATE: 4/2/19
>
> TO WHOM IT MAY CONCERN,
>
> I AM INFORMING YOU THAT THE STAFF AT URF - INTENTIONALLY SENT MY STEP 3 GRIEVANCE TO THE ATTORNEY GENERAL'S OFFICE THE DISBURSEMENT WAS CLEARLY ADDRESSED TO MDOC DIRECTOR'S OFFICE (SEE ATTACHED DISBURSEMENT) UNDER GRIEVANCE NO. URF-1902-0510-17A.
> SO MY GRIEVANCE SHOULD NOT BE CONSIDERED UNTIMELY.

(ECF No. 24-2, PageID.269.)

Rink also argues that Miles failed to present the actual MDOC Disbursement Authorization form showing that he had sent the Step III grievance out of the prison and that his claims are conclusory and should be rejected. Miles, however, submitted a verified complaint and affidavit stating that he submitted his Step III grievance to his prison counselor for mailing. (ECF No. 1, PageID.1, 10; ECF No. 24, PageID.264-265.) Miles states that he has no control over what happens to his mail after he provides it to the prison counselor. (ECF No. 24, PageID.266.) The case law suggests that when a prisoner submits some evidence that he submitted his Step III grievance appeal, he has satisfied his burden of responding to a motion seeking dismissal for failure to exhaust his Step III grievance appeal. Ultimately, it is Defendants' burden

15

to establish a lack of genuine issue of fact regarding the exhaustion of administrative remedies. In the opinion of the undersigned, Defendant has not met his burden.[6]

## VIII. Recommendation

The undersigned respectfully recommends that this Court deny Defendant's motion for summary judgment. The undersigned also notes that the exhaustion issue in this case could be addressed in an evidentiary hearing, pursuant to *Lee v. Willey*.

Dated:  April 15, 2021                                       /s/ *Maarten Vermaat*
                                                             MAARTEN VERMAAT
                                                             U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[6] Whether Miles exhausted his retaliation claim in **URF-1902-0509-28A** is dependent on whether grievance **URF-1809-2504-20E** was properly exhausted. **URF-1902-0509-28A** was rejected as being duplicative of **URF-1809-2504-20E.** (ECF No. 1-1, PageID.24.) Ordinarily, when a grievance is rejected for a failure to satisfy policy, the grievance fails to demonstrate proper exhaustion. *Scott v. Amani*, 577 F.3d 642, 647 (6th Cir. 2009). A common exception to the rejection rule occurs when the rejected grievance is duplicative of an earlier grievance. If a grievance is rejected for being duplicative of an earlier grievance, then the duplicate grievance contains an issue or issues that MDOC has already had an opportunity to address, and the duplicative grievance will be construed as having the same disposition as the original grievance. If the Court concludes that there exists an issue of fact regarding whether **URF-1809-2504-20E** properly exhausted Miles's claims, then an issue of fact must exist regarding whether **URF-1902-0509-28A** properly exhausted Miles's retaliation claim.