UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KUSHAWN S. MILES #237011,

  Plaintiff,

v.

DAVID RINK,

  Defendant.
            /

Case No. 2:19-cv-00167

Hon. Hala Y. Jarbou
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses a summary judgment motion filed by Defendant Chaplain Rink.  (ECF No. 44.)

The Plaintiff in this case – state prisoner Kushawn S. Miles – filed his verified civil rights complaint pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  Miles identifies himself as a Moorish-American Muslim.  He says that his sincerely held religious beliefs require him to adhere to Muslim dietary rules.  In August 2018, Miles asked to participate in the religious meals program at the Chippewa Correctional Facility (URF) so he could receive meals that satisfied these rules.

Miles's case against Rink relates to Rink's handling of Miles's requests for a religious meal accommodation.  Miles alleges (1) that Chaplain Rink, the chaplain at URF, purposely failed to act on Miles's August 2018 requests for a religious meal accommodation, and (2) that Rink, in October 2018, failed to forward his recommendation regarding Miles's suitability for participation in this program to the

Special Activities Coordinator. Miles says that Chaplain Rink's actions violated his rights under the Free Exercise clause of the First Amendment and the Equal Protection clause of the Fourteenth Amendment by denying him the opportunity to participate in the religious meal program. Miles also says that Chaplain Rink's actions in October 2018 were taken to retaliate against Miles for filing a grievance against Rink on the religious meals issue. Miles is currently incarcerated at the Kinross Correctional Facility.

This Court previously dismissed Miles's claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and all claims against URF Assistant Deputy Warden Corrigan. (ECF Nos. 4, 5.) Chaplain Rink is the only remaining Defendant.

Rink previously filed a motion for summary judgment based on Miles's alleged failure to exhaust his administrative remedies. (ECF No. 22.) The Court denied that motion. (ECF No. 33 (Order approving R&R).)

It is respectfully recommended that the Court grant Chaplain Rink's motion for summary judgment and dismiss this case. Miles has failed to show that Chaplain Rink purposefully withheld from the Special Activities Coordinator his recommendation to provide Miles's with a religious meal.

Ultimately, the Special Activities Coordinator denied Miles's request for a religious meal. Miles had the option to choose Halal foods from the vegetarian menu. In the opinion of the undersigned, consistent with the Sixth Circuit's conclusion that Miles's Constitutional rights were not violated by Michigan

2

Department of Corrections (MDOC) when he was denied a previous request for a specific religious meal, Chaplain Rink did not violate his rights for several reasons. Chaplain Rink did not make the ultimate decision denying Miles's request for a religious meal. Also, Miles has adduced no evidence supporting the claim that Chaplain Rink purposefully withheld his recommendation from the Special Activities Coordinator. And, Miles had the ability to choose Halal foods that complied with his religious beliefs from the vegetarian menu. Finally, because Miles cannot establish that Chaplain Rink violated clearly established law, Chaplain Rink is entitled to qualified immunity from liability.

## II. Factual Allegations

Miles says he attends Moorish-American Muslim religious services and must comply with Muslim dietary laws. (ECF No. 1, PageID.5.) Miles alleges that Chaplain Rink "maliciously" refused to process his request for religious meals. (*Id.*)

Miles says that on August 18 and 25, 2018, he wrote kites (written requests) to Chaplain Rink requesting participation in the religious Halal diet and he also submitted a grievance alleging violations of his First and Fourteenth Amendment rights against Chaplain Rink. (*Id.*, PageID.6.) On September 9, 2018, Chaplain Rink responded to the Step I grievance and interviewed Miles. (*Id.*) Miles objected to the interview as a violation of MDOC policy because staff named in the grievance are not supposed to be involved in responding to the grievance. (*Id.*) Chaplain Rink had Miles fill out a Religious Meal Accommodation Application. (*Id.*)

Chaplain Rink then told Miles that he would submit the request to the Special Activities Coordinator for a final decision. (*Id.*)

Miles says he refused to "sign-off" on the grievance because he was unsatisfied until he received approval for religious meals. (*Id.*) Miles says he never received a response regarding his religious meal request. (*Id.*, PageID.7.) Miles then tried to join Chaplain Rink and the Special Activities Coordinator as Defendants in another lawsuit he was pursuing: *Miles-EL v. MDOC*, case no. 1:18-cv-352. (*Id.*) At that time, Miles received an affidavit from Special Activities Coordinator Steven Adamson indicating that he never received a request in 2018 for Miles to receive religious meals. (*Id.*) Miles says that Adamson and Rink maliciously conspired to violate his right to exercise his religious beliefs. (*Id.*)

Miles says that he engaged in protected conduct under the First Amendment when he submitted a grievance relating to his religious meals request and refused to "sign-off" on that grievance. And he says that Chaplain Rink retaliated against him by refusing to process his religious meal request due to this protected activity. (*Id.*, PageID.8.) Miles also alleges that Chaplain Rink violated his right to equal protection by not processing the religious meal request in the same manner as he had for other, similarly-situated Jewish and Muslim inmates. (*Id.*)

### III. *Miles-EL v. MDOC*, case no. 1:18-cv-352

In this Southern Division case, Miles also alleged that he was denied a religious meal accommodation by MDOC Special Activities Coordinator Leach in February of 2016. Miles filed case number 1:18-cv-352 in March of 2018. (W.D.

4

Mich. Case No. 1:18-cv-352, ECF No. 1.)  Miles brought claims under RLUIPA, the First Amendment, and the Fourteenth Amendment.  Miles moved to assert his August of 2018 claim involving the denial of religious meals by joining Defendants Chaplain Rink and Special Activities Coordinator Adamson in that case.  The Court denied joinder because discovery was closed, and joinder would unnecessarily delay the resolution of that case.  (*See* W.D. Mich. Case No. 1:18-cv-352, ECF No. 39, PageID.325-26 (R&R); ECF No. 41 (Opinion and Order adopting R&R).)

In case no. 1:18-cv-352, the Court granted summary judgment, dismissing Miles's claims, by concluding that the decision to deny Miles's request for a religious meal accommodation was appropriate based upon his consumption of foods that did not comply with his purported religious beliefs.  The Court reasoned that Miles's own behavior showed a lack of sincerity and that the *Turner* factors weighed in favor of Defendant's decision to deny Miles a religious meal accommodation.  The Sixth Circuit affirmed the dismissal.  (Case no. 1:18-cv-352, ECF Nos. 39 (R&R), 41 (Opinion and Order adopting R&R), 42 (Judgment dismissing case), and 52 (August 20, 2020, Sixth Circuit order affirming judgment).)  In addition, the Court found that Miles could observe his religious dietary needs by self-selecting foods from the regular menu and by supplementing his diet through Halal food items purchased from the prison store.  (*Id.*)  The Sixth Circuit rejected Miles's First Amendment claim stating:

> Leach averred that Miles has alternative means of observing his faith because he can supplement his diet by purchasing food items from the prison store that comply with his professed religious dietary needs.  He also averred that Miles "has not been permanently barred from

5

>receiving a religious diet accommodation, as he may reapply [for such] as is provided in MDOC [Policy Directive] 05.03.150." Lastly, there is no evidence that the MDOC has ready alternatives that would adequately protect the penological interests relied on by the MDOC, and Miles did not suggest any. Considering these factors, the defendants' denial of Miles's request for a religious meal accommodation was "reasonably related to legitimate penological interests" and therefore did not run afoul of the First Amendment.

*Miles v. Michigan Dep't of Corr.*, No. 19-2218, 2020 WL 6121438, at *3 (6th Cir. Aug. 20, 2020).

### IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## V.  First Amendment Freedom of Religion

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish a violation of his First Amendment rights, Miles must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

A prison officials isolated act that infringes an inmate's religious rights cannot violate the First Amendment without a showing that the conduct was deliberate or willful. *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010). In the opinion of the undersigned, Miles has failed to show that Chaplain Rink deliberately or willfully violated his First Amendment rights to practice his religious beliefs.

Miles says that he submitted kites to Chaplain Rink requesting participation in the religious meal program on August 18, 2018, and August 25, 2018. (ECF No. 1, PageID.6.) Then he filed a grievance in September. (*Id.*) Chaplain Rink's affidavit explains his version of events. (ECF No. 45-3.) He says that he only received one kite from Miles in the fall of 2018, and that kite did not include a request

for a religious diet.  (*Id.*, PageID.398.)  Rink explains that he became involved in Miles's request for religious meals when addressing a grievance filed by Miles.  (*Id.*)  Rink, as Chaplain, was responsible for interviewing applicants for religious meals.  (*Id.*)  He interviewed Miles regarding Miles's grievance and his religious meals application on October 9, 2018.  (*Id.*)

Miles says that it was his intention to recommend that Miles be approved for religious meals.  (*Id.*, PageID.399.)  Rink's report and recommendation regarding Miles's request is shown below.

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **RELIGIOUS MEAL INTERVIEW REPORT & RECOMMENDATION**                    PAGE 2
>
> **Recommendation**
>
> In preparing your recommendation, please note that it should not be based solely upon the prisoner's knowledge and understanding of religious doctrine as stated in the interview.  It must also be based upon the prisoner's conduct and practice of her/his religious faith as indicated in questions one though eight above.
>
> Based on these considerations:
>
> ☒ I recommend prisoner's request be APPROVED
> ☐ I recommend prisoner's request be DENIED
>
> Interviewer (Print Name): Chaplain D. Rink
> Signature of Interviewer: *David M Rink*
> Date: October 9, 2018

(ECF No. 45-3, PageID.408 (attachment to affidavit); *see also, id.*, PageID.404 (Religious Meal Participation Agreement dated Oct. 9, 2018), PageID.405-06 (Rink's interview report), PageID.407 (first page of Rink's recommendation).)

Chaplain Rink explains that he made a mistake and failed to transmit that recommendation to the Special Activities Coordinator.  (*Id.*, PageID.399.) Chaplain Rink asserts that he did not learn of his mistake until March 30, 2020, when he received an email from Assistant Attorney General Alan Soros regarding this lawsuit.  (*Id.*)  Chaplain Rink immediately "re-submitted" his recommendation at

8

that time. (*Id.*, PageID.400.) Chaplain Rink states that formally approving or denying religious meals is outside his discretion as Chaplain. (*Id.*)

Chaplain Rink asserts that he did not infringe Miles's right to practice his religious beliefs because he mistakenly failed to forward his recommendation to approve Miles for religious meals to the Special Activities Coordinator. Chaplain Rink argues that his negligence cannot be the basis for a denial of Miles's religious rights.

Miles says that Chaplain Rink never responded to his kites and may have simply destroyed them or ignored them, and that Chaplain Rink cannot prove that Miles did not send him numerous kites. (ECF No. 46, PageID.411.) Miles asserts that Chaplain Rink had time to notify the Special Activities Coordinator about Miles's request, but instead told Miles that he forwarded the request and had not yet heard back. (*Id.*)

It is undisputed that Rink failed to forward his recommendation regarding Miles's religious meals application in October 2018. As noted above, Rink attributes the delay to oversight. Miles's arguments and evidence fail to create a genuine issue of material fact regarding whether Rink intentionally delayed forwarding his recommendation to the Special Activities Coordinator or otherwise acted with discriminatory purpose.

Chaplain Rink argues that he did not have the authority to approve Miles for religious meals but could only make a recommendation to the Special Activities Coordinator regarding whether be thought Miles should receive religious meals.

9

(ECF No. 45, PageID.380.)   Rink's affidavit states that he only makes a recommendation on a prisoner's application for a religious meal accommodation and the Special Activities Coordinator makes the ultimate decision.   (ECF No. 45-3, PageID.400.)

In this case, the Special Activities Coordinator did not follow Chaplain Rink's recommendation and denied Miles's request for a religious meal accommodation.   A portion of that denial, which is dated April 6, 2020, is shown below.

> DATE:   April 6, 2020
>
> TO:     Connie Horton, Warden
>         Chippewa Correctional Facility.
>
>         David Rink, Chaplain
>         Chippewa Correctional Facility
>
> FROM:   Adrian Dirschell, Acting Special Activities Coordinator
>         Correctional Facilities Administration
>
> SUBJECT: Religious Meal Request:
>
> Prisoner: Miles-El 237011
> Prisoner Religious Preference: M.S.T. of A.
> Religious Preference Start Date: 1/11/2002
> Facility When Request was Submitted: URF
> Facility Where Currently Housed: URF
>
> Mr. Miles requested religious meal accommodation and was interviewed for this accommodation by Chaplain D. Rink at the Chippewa Correctional Facility.
>
> Based on a careful review of all the information available to me at this time, Mr. Miles-El request for religious meal accommodation is Denied. He should not be provided access to the religious menu.

(ECF No. 45-3, PageId.409.)

A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly

acquiesced in, the allegedly unconstitutional conduct. *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990). Chaplain Rink attested that he did not have the authority to approve Miles for a religious meal. (ECF No. 45-3, PageID.400.) In the opinion of the undersigned, Chaplain Rink was not personally involved in denying Miles a religious meal. Rink recommended that Miles be approved for religious meals (*id.*, PageID.408) and forwarded that recommendation, albeit several months late, to the Special Activities Coordinator (*id.*, PageID.400), who ultimately denied Miles's request (*id.*, PageID.409).

Miles has failed to allege facts showing that Rink made the decision to deny Miles's application for religious meals. It should also be noted that Miles has failed to allege facts showing that a timely submission of a recommendation by Rink would have led to a different outcome. As outlined above, Rink says he wrote his recommendation in October 2018. He says he forwarded it to the Special Activities Coordinator in about March 2020. The Special Activities Coordinator, however, did not deny the application until April 2020. (*Id.*, PageID.409.)

More importantly, in the case arising out of Ionia Correctional Facility, the Sixth Circuit specifically determined that Miles's right to practice his religious beliefs was not infringed after his request for a religious diet was denied by the MDOC. *Miles v. Michigan Dep't of Corr.*, No. 19-2218, 2020 WL 6121438, at *3 (6th Cir. Aug. 20, 2020). It is well settled that the MDOC provides a vegetarian diet that meets the requirements of Halal at all prisons. The MDOC Policy Directive provides that "non-meat entrees" shall be available to all prisoners:

11

> REGULAR DIET MENU
>
> H.  The Administrator of the Operations Division, CFA, shall ensure that standardized regular diet menus are issued to be used at all CFA correctional facilities and at the Tuscola RRTP facility. The menu shall identify the food items to be served at each meal and the minimum portions of each item. The menu shall include standardized healthy choice dietary options and, for the noon and evening meals, non-meat entrees.

MDOC Policy Directive 04.07.100.

This Court has determined that the First Amendment is not violated if a Muslim inmate has the option to choose foods that will not violate religious tenants. *Hudson v. Caruso*, 748 F. Supp. 2d, 721, 729 (W.D. Mich. 2010) ("These dietary restrictions do not require the MDOC to provide that prisoner with Halal meat entrees. On the contrary, courts have determined that a correctional facility need only provide Muslim prisoners with food that is not haram.") A Muslim inmate can comply with the prohibition of eating non-Halal meat by eating vegetarian meals. *Abdullah v. Fard*, 173 F.3d 854, at *1 (6th Cir. 1999). "[V]egetarian meals are, in fact halal." *Robinson v. Jackson*, 615 Fed. Appx. 310, 313 (6th Cir. 2015). As the Sixth Circuit has explained, while prisoners have a Constitutional right under the First Amendment to exercise their religious beliefs and to receive meals that do not violate those beliefs, there is "no constitutional right for each prisoner to be served the specific foods he desires – such as Halal meat – in prison. *Id.* at 314. As the Sixth Circuit stated, Miles had the opportunity to comply with his religious beliefs by choosing the foods that comply with his beliefs from the vegetarian menu available to him at Chippewa Correctional Facility as he had at Ionia Correctional Facility. In the opinion of the undersigned, this Court should not revisit this issue.

## VI. First Amendment Retaliation

Miles argues that Chaplain Rink retaliated against him by withholding his recommendation to approve a religious meal after Miles filed a grievance on the issue. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has also employed a burden-shifting approach with respect to the causation element:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

Miles alleges that he engaged in protected conduct by filing a grievance against Chaplain Rink for failing to respond to Miles's kites regarding religious meals. (ECF

13

No. 45-3, PageID.402 (Miles's Step I grievance in URF-1809-2504-20E).) Chaplain Rink does not contest Miles's assertion that he engaged in protected conduct. Miles asserts that Chaplain Rink retaliated against him, as a result of this grievance, by failing to process his religious meals request. (ECF No. 1, PageID.9.) However, as noted above, Miles had the opportunity to choose foods that complied with his religious beliefs from the vegetarian menu that was available to him. In the opinion of the undersigned, no adverse action was taken against him that could have violated his religious rights.

Chaplain Rink also argues that his failure to forward his recommendation was not due to Miles's grievance or refusal to sign off on the grievance. "Under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue—that is, the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity." *Smith*, 250 F.3d at 1038. Chaplain Rink argues that he was not motivated by Miles's grievance to deny or refuse to process his request for a religious meal. On the contrary, Chaplain Rink states that it was the grievance which first made him aware of Miles's desire for a religious meal and asserts that he conducted the interview in direct response to the grievance. (ECF No. 45-3, PageID.398.) Chaplain Rink then wrote a recommendation to the Special Activities Coordinator to approve Miles for a religious meal. (*Id.*, PageID.399, and PageID.407-408.) Despite believing that he had sent that recommendation, Chaplain Rink failed to forward that recommendation until after Miles filed this lawsuit. (*Id.*, PageID.399.) However,

14

when the recommendation was forwarded, it was denied by the Special Activities Coordinator.

Miles argues that Chaplain Rink ignored or destroyed his kites and likely never forwarded the request to the Special Activities Coordinator. (ECF No. 46, PageID.411.) As noted above, Rink attributes the delay to his oversight in failing to timely forward his recommendation. In the opinion of the undersigned, Miles has failed to establish a genuine issue of material fact regarding the causation element of his retaliation claim by presenting evidence that Chaplain Rink acted deliberately in failing to forward his recommendation to the Special Activities Coordinator.

Although Miles asserts that the delay prevented him from submitting new requests for religious meals, the Special Activities Coordinator denied his request for a religious meal on April 6, 2020. As noted above, the Sixth Circuit had affirmed this Court's dismissal of Miles's lawsuit arising out of Ionia Correctional Facility regarding this identical issue. The Court specifically determined that Miles had meals available to him at the prison that complied with his religious beliefs and that a specific religious meal was not necessary to comply with Miles's religious rights under the First Amendment and RLUIPA. In the opinion of the undersigned, Miles has failed to show that Chaplain Rink acted with retaliatory intent.

### VII. Fourteenth Amendment Equal Protection

Miles asserts that Chaplain Rink discriminated against him based upon his religious beliefs by purposefully refusing to process his religious meal request. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not

"deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."   *City of Cleburne,* 473 U.S. at 440.

To establish a cognizable equal protection claim, a plaintiff must show "that [he was] 'intentionally singled out by the government for discriminatory adverse treatment.'"   *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 905 (6th Cir. 2019) (quoting *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005)).   This Court has already denied a similar equal protection claim brought by Miles because he failed to show that he was treated differently than similarly situated prisoners or was purposefully discriminated against.   (Case no. 1:18-cv-352, ECF Nos. 39, PageID.344 (Report and Recommendation), 41 (Opinion and Order adopting Report and Recommendation), 42 (Judgment dismissing case).   Likewise in this case, Miles has failed to present any evidence showing that he was treated differently from similarly situated prisoners or that the denial of his request for a religious diet was the result of intentional and purposeful discrimination.   In the opinion of the undersigned, Miles's equal protection claims should be dismissed.

### VIII.   Qualified Immunity

As an alternative argument, Defendant moves for dismissal on qualified immunity grounds.  "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The analysis entails a two-step inquiry.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the court must "determine if the facts alleged make out a violation of a constitutional right."  *Id.*  (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).  Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."  *Id.* (citing *Pearson*, 555 U.S. at 232).  A court may address these steps in any order.  *Id.* (citing *Pearson*, 555 U.S. at 236).  A government official is entitled to qualified immunity if either step of the analysis is not satisfied.  *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We

> have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

Miles alleges that Chaplain Rink purposely delayed his recommendation to the Special Activities Coordinator in violation of his right to practice his religious beliefs, in retaliation for his grievance filing, and in violation of his equal protection rights. Chaplain Rink has asserted that he mistakenly failed to send his recommendation that Miles should receive a religious meal. Miles has presented nothing more than a conclusory assertion that Chaplain Rink intentionally failed to send the recommendation to delay the ultimate approval or denial by the Special Activities Coordinator. Miles has simply failed to show a violation of his Constitutional rights.

The Sixth Circuit has specifically concluded that Miles's rights were not violated when he was previously denied a Halal religious meal and affirmed this Court's dismissal based upon qualified immunity grounds. *Miles*, No. 19-2218, 2020 WL 6121438. To the extent that Miles relies on *Dowdy-El v. Caruso*, 2013 WL 6094695 (E.D. Mich., Nov. 20, 2013) as support for his conclusion that he is entitled to a religious diet, other than what is available to him from the regularly provided

meals, that case does not support his claim that he is entitled to a special religious meal. In *Dowdy-EL* the Court specifically found that while Muslim prisoners were entitled to a Halal diet, the vegetarian or vegan meals provided by the prison satisfied that requirement. The Court stated that "while a prisoner has a right to a meal that meets religious restrictions, they do not necessarily have a right to a meal which provides meat." *Id.* at *2. This finding is consistent with this Court's and Sixth Circuit's conclusion that Constitutional rights are not violated when an inmate has the option to choose foods that will not violate religious tenants. *Hudson*, 748 F. Supp. 2d, at 729; *Robinson*, 615 Fed. Appx. at 313. In the opinion of the undersigned, Defendant Chaplain Rink is entitled to qualified immunity.

## IX. Recommendation

It is respectfully recommended that the Court grant Defendant Chaplain Rink's motion for summary judgment and dismiss this case.

Dated: July 11, 2022        /s/ *Maarten Vermaat*
                            MAARTEN VERMAAT
                            U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985).