UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KUSHAWN S. MILES,

    Plaintiff,

v.

    Case No. 2:19-cv-167

    Hon. Hala Y. Jarbou

DAVID RINK, et al.,

    Defendants.
_____/

## OPINION

The reviewing magistrate judge issued a Report and Recommendation (R&R, ECF No. 48) on July 11, 2022, recommending that the Court grant Defendant Chaplain David Rink's motion for summary judgment (ECF No. 44). Before the Court are Plaintiff's objections (ECF No. 49) to the R&R. The Court will adopt the R&R in part and reject it in part.

### I.    BACKGROUND

Plaintiff Kushawn Miles-El (Miles) was incarcerated at Chippewa Correctional Facility when Defendant Chaplain David Rink received at least one "kite" from Miles in late August 2018.[1] Although the subject matter of this kite is disputed, Miles alleges that it contained a request for a religious meal accommodation. Specifically, Miles alleges that he requested a Halal diet because he is a Moorish-American Muslim. Miles later filed a grievance with the facility against Rink. In the grievance, Miles stated that Rink failed to respond to the kite in a timely manner, violating his rights under the First and Fourteenth Amendments.

---

[1] A kite is a written concern or request that a prisoner or detainee can submit to the prison.

In response to this grievance, Rink initiated a grievance review and interviewed Miles in September or October 2018.[2] Miles objected to this interview, stating that a named party to a grievance may not respond to the grievance under Michigan Department of Corrections (MDOC) policy. Nonetheless, Rink completed the interview, directed Miles to fill out a Religious Meal Accommodation Application (RMAA), and conducted a Religious Meal assessment. Rink then indicated that he would recommend approval and submit Miles's application to the Special Activities Coordinator (SAC). The SAC is responsible for rendering a final decision on accommodation requests.

Rink did not submit the accommodation requests to the SAC until May 2020 when an Assistant Attorney General notified him that Miles filed this action. Rink claims that this approximately one-and-a-half-year delay was an oversight. However, Miles avers that he frequently met with Rink and asked about the status of his RMAA. (Miles Aff., ECF No. 46, PageID.411.) Rink repeatedly told Miles that he had not heard anything from the SAC. (*Id.*) Miles also notes that this delay in transmission prevented him from reapplying for the meal accommodation for three years, because prisoners cannot reapply for an accommodation until the SAC issues a denial. And after a denial is issued, prisoners must wait an additional year before they can reapply.

At this point in the case, Rink is the sole defendant, and four claims remain against him: Miles alleges that (1) Rink violated his First Amendment right to practice his religion when Rink did not transmit his RMAA to the SAC; (2) Rink violated the First Amendment when he retaliated against Miles for filing a grievance against him by not transmitting the RMAA; (3) Rink violated

---

[2] Miles's verified complaint asserts that Rink interviewed him on September 9, 2018. Rink, however, contends that he interviewed Miles on October 9, 2018. Indeed, Rink's recommendation for approval of the Religious Meal Accommodation is dated October 9, 2018.

the Fourteenth Amendment's Equal Protection Clause when he did not transmit the RMAA; and (4) Rink violated corresponding provisions in Michigan's constitution.

The R&R recommended granting Rink's motion for summary judgment. The R&R found that Miles failed to show that Rink violated the First or Fourteenth Amendments, and that Rink was entitled to qualified immunity. Miles raises several objections to the R&R.

## II.   STANDARD

Under Rule 72 of the Federal Rules of Civil Procedure, the Court must review de novo the portions of the R&R to which objections have been properly made:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

## III.   ANALYSIS

### A. First Amendment Claim - Retaliation

First, Miles maintains that the R&R did not view the facts in the light most favorable to him. When viewed under this light, Miles argues there is a genuine dispute about whether Rink withheld Miles's accommodation for retaliatory reasons. The Court agrees.

Summary judgment is appropriate only when there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S 242, 249 (1986); *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018). When considering a motion for summary judgment, the Court must "view[] the factual evidence and draw[] all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

3

The R&R omitted pertinent portions of Miles's affidavit.  Specifically, Miles stated that after he submitted his accommodation materials and Rink promised to give a supportive recommendation, Miles frequently met with Rink. (Miles Aff., PageID.411-14.)  Further, during these meetings Miles asked Rink about the status of his accommodation application.  (*Id.*) According to the affidavit, Rink claimed that he sent the materials to the SAC and had not received anything back. (*Id.*)  Miles argues that these frequent status checks would have made Rink aware that he had not transmitted the materials if it was a negligent oversight as Rink contends.  (*Id.*) Miles contends that this shows that Rink did, in fact, know that he had not forwarded Miles's meal requests to the SAC.  (*Id.*)

Miles must prove three elements to prevail on a First Amendment retaliation claim: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in such conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 2001).  Circumstantial evidence of retaliatory motive is permissible. *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010).  Finally, "temporal proximity between the prisoner's protected conduct and the official's adverse action," coupled with other supporting evidence, is sufficient circumstantial evidence of motive. *Id.* at 476.

A reasonable jury could conclude that Rink refrained from transmitting the religious accommodation documents because Miles previously filed a grievance against Rink.  First, Miles engaged in protected conduct.  As a matter of law, the First Amendment protects a prisoner's right to file a grievance against a prison official. *Id.* at 472 (*citing Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)).

4

Second, a reasonable jury could find that Rink's withholding of accommodation documents could deter a prisoner of ordinary firmness from filing future grievances. Because of the untimely transmission of Miles's accommodation documents, Miles was unable to reapply for an accommodation for three years. (Miles Aff., PageID.412.) Prisoners of ordinary firmness might refrain from filing a legitimate grievance if it could cost them the timely delivery of a desired accommodation decision.

Finally, a reasonable jury could conclude that this adverse action was in part motivated by Miles's filing of the grievance against Rink. Indeed, the temporal proximity of the filed grievance with the failed transmittal of the accommodation materials, coupled with the possibility that Rink knew he did not transmit the materials supports such a conclusion. If Rink knew he did not forward Miles's materials, then Rink was not being truthful during his meetings with Miles about the status of the accommodation request. Further, if Rink was lying, a reasonable jury could arguably infer that Rink purposefully withheld Miles's documents because Miles filed a grievance against him. Thus, there is a genuine dispute of fact about whether Rink knew that he did not forward Miles's meal documents and whether Rink's conduct amounted to retaliation.

Accordingly, the Court will deny Rink's motion for summary judgment on the retaliation claim.

### B. First Amendment – Free Exercise

Next, Miles makes several objections that require the Court to analyze whether the R&R improperly concluded that Rink did not violate Miles's right to fully exercise his religion. Miles contends that the R&R improperly concluded that Rink did not infringe upon Miles's ability to heed his religion's requirement of only consuming Halal food. The Court disagrees.

Under the First Amendment, inmates have a right to freely exercise their religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). An inmate must meet the following elements to establish a violation of free exercise rights: (1) the belief or practice asserted is religious in the person's own scheme of things; (2) the belief is sincerely held; and (3) the defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987).

The MDOC's meals allow Muslim inmates to comply with Muslim dietary restrictions. The MDOC provides vegetarian meal options to all prisoners, and these options "are, in fact [H]alal." *Robinson v. Jackson*, 615 F. App'x 310, 313 (6th Cir. 2015); *see also Miles v. Mich. Dep't of Corrs.*, No. 19-2218, 2020 WL 6121438, at *3 (6th Cir. Aug. 20, 2020) ("Miles can still observe his religion's dietary needs [after denial of a request for a religious meal accommodation], namely by supplementing his diet by purchasing halal food items from the prison store."); *Abdullah v. Fard*, No. 97-3935, 1999 WL 98529 at *1 (6th Cir. Jan. 28, 1999) (observing that Muslim inmates comply with their religious dietary restrictions with vegetarian diets). Even though these meals do not include Halal meat, inmates are not entitled to, and the MDOC need not offer, Halal meat. *Hudson v. Caruso*, 748 F. Supp. 2d. 721, 729 (W.D. Mich. 2010).

Miles has not shown that Rink's behavior impeded his ability to heed his dietary restrictions. Miles had the ability to comply with his dietary restrictions without participation in a religious meal program. Even if Rink withheld Miles's accommodation packet in retaliation for Miles's filing of a grievance, Miles could still exercise his religious beliefs by consuming the vegetarian meals that the MDOC offers. And although the meal accommodation would provide

Miles with additional Halal options, he was not entitled to them or restrained from exercising his beliefs without the accommodation.[3]

### C. Fourteenth Amendment – Equal Protection

Miles makes numerous objections directed at the R&R's conclusion that Rink did not deny Miles equal protection of the law. Miles asserts that Rink denied him equal protection when he did not send his religious meals application to the SAC. The Court disagrees.

A viable equal protection claim requires a showing that discriminatory intent or purpose was a factor in a prison official's decision or conduct. *See May v.* Klee, 915 F.3d 1076, 1085 (6th Cir. 2019). Discriminatory purpose means that the official engaged in conduct "because of its detrimental effects on an identifiable group." *Ropoleski v. Rairigh*, 886 F. Supp. 1356, 1363 (W.D. Mich. 1995) (citations omitted).

Miles has failed to proffer evidence, direct or circumstantial, indicating that Rink withheld his meal program application with discriminatory intent. As discussed above, the evidence suggests that Rink withheld Miles's application with retaliatory intent, but Miles has not offered evidence to show that Rink did so because Miles is Muslim. Consequently, Miles has failed to produce evidence for a reasonable jury to find in his favor on his equal protection claim.

### D. Qualified Immunity

Miles objects to the R&R's finding that Rink is entitled to qualified immunity. Miles argues that it is clearly established that a prison official may not retaliate against inmates for filing grievances. The Court agrees.

---

[3] In a prior action with similar allegations against different prison officials, the Sixth Circuit also indicated that Miles had not demonstrated that his right to free exercise of his religion was violated by denial of a religious meal accommodation because he had available alternatives. *Miles*, 2020 WL 6121438, at *3.

Qualified immunity affords officials who perform discretionary functions a shield from civil liability so long as their conduct does not violate clearly established law. *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008). To overcome a qualified immunity defense, a plaintiff must show that the right was so clearly established that "every 'reasonable official would have understood that what he [was] doing violated that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A plaintiff is not required to find "a case directly on point for a right to be clearly established, but existing precedent must have placed the . . . question beyond debate." *Id.*

Miles's right to be free from retaliation for filing grievances was clearly established when the events in this case occurred. The Sixth Circuit has long recognized that the First Amendment precludes prison officials from retaliating against inmates for filing grievances. *Scott v. Churchill*, 377 F.3d 565, 570-71 (6th Cir. 2004). Accordingly, in 2018 to 2020, any reasonable prison official—including Rink—would have known that withholding accommodation materials in retaliation for an inmate's filing a grievance was impermissible. And because a genuine dispute of material fact exists as to Rink's intent, Rink is not entitled to qualified immunity for the remaining retaliation claim.

### E. State Law Claims

Finally, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which arise under the Michigan constitution. When supplemental claims substantially predominate over a "claim over which the district court has original jurisdiction," a district court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(2). Where, as here, multiple federal claims are dismissed, it is appropriate to decline to exercise supplemental

8

jurisdiction over significant state law claims. *McCray v. Carter*, 571 F. App'x 392, 400 n.2 (6th Cir. 2014).

The state law claims substantially predominate over the one remaining federal claim in this case. Miles brought several state law claims that corresponded with each of his federal constitutional claims. (*See* Compl. ¶ 32, ECF No. 1.) But the Court will dismiss most of the federal claims. Indeed, only the First Amendment retaliation claim will remain. Consequently, the several state law claims would substantially predominate in this case in terms of proof and the scope of issues raised. The Court also considers "the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial[.]" *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966). Accordingly, supplemental jurisdiction is not warranted. A state court is the more appropriate forum for those claims.

## IV.    CONCLUSION

For the reasons stated, the Court will overrule in part and sustain in part Plaintiff Miles's objections. The Court will grant summary judgment in favor of Defendant Rink on Plaintiff's First Amendment free exercise and Fourteenth Amendment equal protection claims. The Court will decline to exercise supplemental jurisdiction over the state law claims and dismiss them without prejudice. Plaintiff's First Amendment retaliation claim remains.

Dated: September 27, 2022         /s/ Hala Y. Jarbou
                                  HALA Y. JARBOU
                                  CHIEF UNITED STATES DISTRICT JUDGE